

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00145-CR
No. 02-22-00146-CR

_____

ANTHONY NICO STARNESOSORIA A/K/A NICO ANTHONY
STARNESOSORIA, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court Nos. 1606372D, 1657815R

---

Before Sudderth, C.J.; Kerr, J.; and Fahey, J.[1]
Memorandum Opinion by Visiting Judge Megan Fahey, Sitting by Assignment

---

[1]The Honorable Megan Fahey, Judge of the 348th District Court of Tarrant County, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to Section 74.003(h) of the Government Code. *See* Tex. Gov't Code Ann. § 74.003(h).

**MEMORANDUM OPINION**

In a consolidated trial, a jury convicted Appellant Anthony Nico Starnesosoria[2] of the offense of unlawful possession of a firearm by a felon and assessed punishment at ten years' confinement; the jury also convicted him of aggravated robbery with a deadly weapon and assessed punishment at fifty years' confinement and a $5000 fine. The trial court ordered the sentences to run concurrently. In his sole issue, Appellant argues that the trial court abused its discretion when it concluded that he had voluntarily absented himself from his trial, yielding a Sixth Amendment violation. We affirm.

## I. BACKGROUND

Appellant was present when his trial began on June 27, 2022. He entered a not-guilty plea, after which three witnesses testified. At day's end, the trial court instructed the parties to report at 9:30 the following morning for the trial's continuation. But as of 10:00 a.m., Appellant was not there. Even after a sheriff's deputy called Appellant's name three times in the hallway, looked for him in the halls and on other floors, and checked the restrooms, Appellant was not located. In addition, defense counsel stated that he was unable to communicate with Appellant at that time.

---

[2]The judgments state Appellant's name as Starnesosoria, but he is also referred to in the record as Starnes-Osoria.

The trial court found that Appellant had been present when trial started, he had entered his plea to both indictments, and he had voluntarily absented himself that second morning. The trial court revoked Appellant's bonds and, over defense counsel's objection, instructed that the trial would proceed without Appellant. The State then called its next witness.

After the lunch recess, Appellant's counsel notified the trial court that, according to his legal assistant, Appellant had contacted his office and left a voicemail message stating that he was "really sick" and was going to the doctor. Asking counsel to gather more information, the trial court said that Appellant would need a doctor's note and a COVID-19 test. During the short break that followed, counsel learned from his assistant that Appellant's voicemail indicated that he had a rash and a swollen eye. Counsel's legal assistant did not speak directly with Appellant and had not been able to reach him by phone. The trial court again recessed the proceedings and asked the State to contact the warrants division to try and locate Appellant.

After that break, Appellant's counsel informed the trial court that someone from his office had finally spoken with Appellant, who said that he was going to an urgent-care facility and would send pictures afterward to show his condition. Another lengthy recess later, Appellant's counsel told the trial court of a text he had received stating that Appellant was at Medical City Dallas. The State called that facility—but it had no record of Appellant's presence. The State also advised the trial court that, according to its investigator, the phone from which Appellant was contacting his

3

counsel appeared to be a "burner phone"[3] not associated with anyone. After recounting the sequence of events to that point, the trial court stated, "We're going to proceed without him," and the State then put on three more witnesses during the afternoon of June 28.

When the trial continued the next day, June 29, Appellant again did not appear. A deputy again called Appellant's name three times and searched the hallway and restroom. Appellant's counsel reported that he had lost communication with his client. The trial once more continued in Appellant's absence, and the jury convicted him of both offenses and assessed his punishment. Appellant was arrested on July 5, 2022, and appeared for a July 8, 2022 sentencing hearing.

Appellant filed a motion for new trial arguing that he was unlawfully tried in absentia because he was under the care of a medical doctor and was advised not to return to work or other activity for two days. At the new-trial hearing, defense counsel testified that he was not given an opportunity to investigate Appellant's absence from trial. He further testified that Appellant was prejudiced and was denied effective assistance of counsel at trial because counsel could not communicate with

---

[3]"A 'burner phone' is a cheap, prepaid mobile phone that you can destroy or discard when you no longer need it." Tim Brookes & Chris Hoffman, "What Is a Burner Phone, and When Should You Use One?" https://www.howtogeek.com/712588/what-is-a-burner-phone-and-when-should-you-use-one/ (last visited July 26, 2023).

Appellant to get his real-time input on "what witnesses [were] saying, what they [were] alleging occurred[,] and whether his perception of that [was] correct or not."

Appellant introduced the affidavit of his mother, who stated that when she got home from work at 4:30 p.m. on June 28, 2022, Appellant was very ill: he was "nauseous and throwing up" and "had a severe headache." She took him to the hospital that evening and brought him back to her house upon his release. Appellant did not testify at the new-trial hearing but offered his own affidavit, which stated that when he woke up on June 28, his ankles were swollen, he was nauseous, and he vomited several times. Appellant said he was unable to leave his house due to illness and called his attorney's office to let him know. When his mother returned from work, she took him to Medical City Dallas. According to his affidavit, Appellant was not voluntarily absent from his trial and had wanted to be there.

Appellant also offered his Medical City records at the hearing on his new-trial motion. Those records indicate that Appellant was admitted at 10:20 p.m. on June 28 chiefly complaining of a rash and swelling and was released a little more than three hours later, at 1:39 a.m. on June 29. The records note that Appellant was not in immediate distress and the swelling and rash were "very mild." The discharge notes reflect that Appellant would follow up with a primary-care physician and was stable and appropriate for discharge. The patient-information sheet given to Appellant states that he could return to work in two days and advised caution because he might have been given medicine that causes drowsiness or dizziness, although in fact he was

5

given only a topical steroid cream. The patient-information sheet further advised not to make important legal decisions or perform jobs requiring concentration.

The State countered with the affidavit of Appellant's treating physician at Medical City. In addition to stating that he had provided Appellant with a mild steroid cream for a very mild rash, the doctor offered his "medical opinion that there was no medical reason that [Appellant] could not have attended court based on [the doctor's] medical evaluation, patient history provided, and labs." The doctor also noted that the instruction about not returning to work for two days was "auto-populated," and he saw "no reason why" Appellant could not have come to court.

## II. DISCUSSION

Appellant argues in his sole issue that he was denied his right under the Sixth Amendment of the United States Constitution to be present at his trial when the trial court concluded that he had voluntarily absented himself. The Sixth Amendment guarantees that an accused has the right to be present in the courtroom at every stage of his trial. *Illinois v. Allen*, 397 U.S. 337, 338, 90 S. Ct. 1057, 1058 (1970). But a defendant who voluntarily absents himself from trial waives that right. *See Taylor v. United States*, 414 U.S. 17, 19, 94 S. Ct. 194, 195 (1973).

Texas Code of Criminal Procedure Article 33.03 states that in all felony prosecutions, the defendant must be present in person at the trial, but "when the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to

6

its conclusion." Tex. Code Crim. Proc. Ann. art. 33.03; *Moore v. State*, 670 S.W.2d 259, 260–61 (Tex. Crim. App. 1984); *Cartwright v. State*, No. 02-20-00121-CR, 2021 WL 2006403, at *2 (Tex. App.—Fort Worth May 20, 2021, pet. ref'd) (mem. op., not designated for publication). When some evidence supports a conclusion that a defendant's absence is voluntary, a trial court does not abuse its discretion by denying a motion for continuance and proceeding with trial as Article 33.03 authorizes. *Moore*, 670 S.W.2d at 261. In reviewing such a decision, we may consider not only the evidence before the trial court at the time it ruled but also any later-developed evidence. *Id.* We will not disturb the trial court's finding unless the defendant presents evidence that refutes the trial court's determination. *Id.*

Several cases with similar facts support the conclusion that Appellant "voluntarily absent[ed] himself" under Article 33.03. In *Cartwright*, on the second day of trial the defendant was present, and the State called five witnesses before resting its case just ahead of the lunch recess. 2021 WL 2006403, at *1. The defendant did not come back after lunch, and neither the bailiff nor defense counsel could find or contact him. *Id.* On appeal, we held that the trial court did not abuse its discretion in finding that the defendant was voluntarily absent from trial. *Id.* at *3. Our holding drew heavily from *Moore*, whose facts we summarized:

> In that case, after the appellant appeared in court and entered a plea of not guilty and the jury was selected and sworn, the trial court recessed until the next morning. [*Moore*, 670 S.W.2d at 260]. Although the appellant's counsel told the appellant when and where to appear the next day, the appellant, who was out on bond, did not appear when court

7

resumed the next morning. *Id.* The trial court had the bailiff call the appellant's name in the hall, and the appellant's counsel informed the trial court that he had not spoken with the appellant since the prior evening and did not know his whereabouts. *Id.*

> When the trial court decided to proceed with the case under Article 33.03, the appellant's counsel objected and moved for a 24-hour continuance to try to locate the appellant, who had no phone and "no fixed place of abode" and had a history of heart problems. *Id.* The trial court replied that there was no evidence as to why the appellant was absent and that a motion for mistrial would be entertained if the appellant had fallen ill from a heart attack but "right now the Court has nothing before it as to why this case should not continue under Article 33.03." *Id.* The appellant remained absent for the rest of the trial, and the jury found him guilty and assessed his punishment; six months later, he was extradited from Illinois and sentenced. *Id.*

*Id.* at *3.

The facts of *Cartwright* and *Moore* are directly on point. Like those defendants, Appellant was out on bond, had appeared for trial, and was told when and where to appear when court reconvened. *See Moore*, 670 S.W.2d at 260; *Cartwright*, 2021 WL 2006403, at *3. At the time the trial court determined that Appellant's absence was voluntary, some evidence supported that conclusion. *See Moore*, 670 S.W.2d at 261.

Also squarely on point is a case from our sister court in Austin that similarly involved a defendant who sought medical care during trial and did not return. In *Reed v. State*, the defendant was present for jury selection and was instructed to return the following morning. No. 03-02-00720-CR, 2004 WL 34831, at *4 (Tex. App.—Austin Jan. 8, 2004, no pet.) (mem. op., not designated for publication). After the defendant failed to appear, the trial court learned that he was in the emergency room and

recessed the proceedings until the afternoon. *Id.* The defendant still did not appear but left a voicemail message with the court coordinator stating that he was going to a "lung specialist" that afternoon. *Id.* The trial court confirmed that although the defendant had been at the emergency room, he was discharged after being treated not for any pulmonary problems but for an upset stomach. *Id.* The emergency-room nurse testified that the defendant was "alert, oriented, and ambulatory" at his discharge, and nothing in the record showed that the defendant had a valid medical reason for skipping his trial. *Id.* Holding that the defendant's "vague assertions [in the voicemail message] about medical treatment" were not enough to show that the trial court abused its discretion by proceeding in his absence, the appellate court affirmed the judgment. *Id.*

Appellant argues that he presented evidence—his affidavit, his mother's affidavit, and his medical records—that refuted the trial court's finding that he was voluntarily absent. The two affidavits reflect that Appellant went to the hospital on the evening of June 28; the medical records indicate that Appellant was admitted at 10:20 p.m. and released at 1:39 a.m. on June 29. But Appellant told his attorney that he was at Medical City on the afternoon of June 28, while the trial was in session.

According to the medical records, Appellant's condition was "very mild," and he was not in immediate distress. These records do not support Appellant's and his mother's affidavits, which averred that Appellant was nauseous and vomiting. Appellant's treating physician stated in his affidavit that there was no medical reason

9

Appellant could not return to the trial. That doctor also explained that the instruction about not returning to work was essentially boilerplate and generic and that Appellant could have returned to court.

Although he had been released from Medical City several hours before trial was to resume, Appellant did not appear on June 29 or contact anyone to say that he could not be there. In fact, Appellant's attorney told the trial court on June 29 that he had lost contact with his client. Nothing in the record indicates that Appellant ever contacted his attorney or the trial court after his release from Medical City on June 29; he next resurfaced when arrested on July 5.

As in *Reed*, Appellant's assertions about his medical treatment are not enough to show that the trial court abused its discretion by proceeding without him. And Appellant's evidence does not refute the trial court's finding that he was voluntarily absent from trial. We overrule Appellant's issue.

### III. CONCLUSION

Having overruled Appellant's sole issue on appeal, we affirm the trial court's judgments.

/s/ Megan Fahey

Megan Fahey
Visiting Judge

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 3, 2023

10